### UNITED STATES of America, ex rel. Rebecca GONZALEZ, Plaintiff/Relator,

v.

### FRESENIUS MEDICAL CARE NORTH AMERICA, et al., Defendants.

No. EP–07–247–PRM.

United States District Court, W.D. Texas, El Paso Division.

Aug. 11, 2010.

Mark Dawson Jarmie, Jarmie & Associates, Albuquerque, NM, Mark D. Standridge, Jarmie & Associates, Las Cruces, NM, Thomas E. Stanton, Law Offices of Thomas Stanton, El Paso, TX, for Plaintiff/Relator.

A. Kevin Troutman, Stephen J. Roppolo, Fisher & Phillips LLP, Houston, TX, Edward L. Dowd, Jr., James F. Bennett, Megan S. Heinsz, St. Louis, MO, James O. Darnell, Jim Darnell, P.C., El Paso, TX, Jennifer L. Aspinall, Dowd Bennett LLP, Clayton, MO, Juanita Rose Brooks, Roger Allen Denning, Fish & Richardson P.C., San Diego, CA, Richard Andrew Bonner, Kemp Smith LLP, El Paso, TX, Christopher S. Johns, Dawson, Sodd, Ellis and Hodge LLP, Austin, TX, for Defendants.

### ORDER ON ATTORNEYS' FEES AND COSTS

PHILIP R. MARTINEZ, District Judge.

On this day, the Court considered the following pleadings filed in the above-captioned cause: Defendants Fresenius Medical Care North America and Larry Ramirez's (Fresenius Defendants)[1] "Bill of Costs" (Docket No. 460), filed on April 2, 2010 [hereinafter Fresenius Defs.' Bill of Costs]; Plaintiff/Relator Rebecca Gonzalez's (Relator) "Response/Objections to the Fresenius Defendants' Bill of Costs" (Docket No. 464), filed on April 13, 2010 [hereinafter Relator's Objections to Fresenius Defs.' Costs]; Fresenius Defendants' "Reply in Support of Motion for Costs" (Docket No. 470),[2] filed April 22, 2010 [hereinafter Fresenius Defs.' Reply in Support of Costs]; Defendant Alfonso Chavez's (Chavez) "Bill of Costs" (Docket No. 469), filed on April 16, 2010 [hereinafter Chavez's Bill of Costs]; Relator's "Response/Objections to Defendant Alfonso Chavez's Bill of Costs" (Docket No. 471),

---

1. The term "Fresenius Defendants" includes Fresenius Medical Care North America, Bio-Medical Applications of Texas, Inc., Fresenius Medical Care Holdings, Inc., and Larry Ramirez. "Fresenius Defendants" refers to this group of defendants, including Ramirez, while "Fresenius" refers only to Fresenius Medical Care North America, Bio-Medical Applications of Texas, Inc., and Fresenius Medical Care Holdings, Inc.

2. Defendant Alfonso Chavez adopted the arguments and authorities contained in this filing by way of his "Notice of Defendant Alfonso Chavez M.D.'s Adoption of Arguments and Authorities Presented in Fresenius' Reply to Relator/Plaintiff's Response/Objections to Bill of Costs" (Docket No. 475), filed on May 3, 2010.

filed on April 27, 2010 [hereinafter Relator's Objections to Chavez's Costs]; Fresenius Defendants' "Motion for Attorney's Fees for Defense of Rebecca Gonzalez's Retaliation Complaint and in Accordance with Prior Sanctions Order" (Docket No. 465), filed on April 14, 2010 [hereinafter Fresenius Defs.' Mot. for Att'ys' Fees]; Relator's "Response in Opposition to the Fresenius Defendants' Motion for Attorney's Fees for Defense of Retaliation Complaint" (Docket No. 479),[3] filed on May 14, 2010 [hereinafter Relator's Resp. to Fresenius Defs.' Mot. for Att'ys' Fees]; Fresenius Defendants' "Reply in Support of Motion for Attorney's Fees" (Docket No. 482), filed on May 26, 2010 [hereinafter Fresenius Defs.' Reply in Support of Mot. for Att'y's Fees]; Chavez's "Sanctions Motion for Attorneys' Fees Under 31 U.S.C. § 3730 and 28 U.S.C. § 1927" (Docket No. 467), filed on April 14, 2010 [hereinafter Chavez's Mot. for Att'ys' Fees]; Relator's "Response in Opposition to Defendant Alfonso Chavez's Sanctions Motions for Attorneys' Fees" (Docket No. 481), filed on May 14, 2010 [hereinafter Relator's Resp. to Chavez's Mot. for Att'ys' Fees]; Chavez's "Motion for Leave to File Affidavits and a Certificate of Conference Supporting His Sanctions Motion for Attorneys' Fees" (Docket No. 476), filed May 4, 2010 [hereinafter Chavez's Mot. for Leave to File]; and Relator's "Response to Defendant Alfonso Chavez's Motion for Leave to File Affidavits and a Certificate of Conference Supporting His Sanctions Motion for Attorneys' Fees" (Docket No. 480), filed on May 14, 2010 [hereinafter Relator's Resp. to Chavez's Mot. for Leave to File].

After due consideration, the Court is of the opinion that it should sustain in part and deny in part the Relator's objections to the bills of costs of Fresenius Defendants and Chavez; grant in part and deny in part Fresenius Defendants' motion for attorney's fees; and deny Chavez's motion for attorney's fees in this matter for the reasons explained below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 26, 2006, Relator filed a sealed complaint against Fresenius and Chavez, and on behalf of the United States of America (the United States, or the Government), alleging violations of the False Claims Act. On November 21, 2007, the Government informed the Court that it had elected not to intervene in the action. Docket No. 20, Cause No. 06–CV–336–PRM. On December 19, 2007, the Court unsealed the case pursuant to Relator's motion. Docket No. 25, Cause No. 06–CV–336–PRM. Meanwhile, on July 10, 2007, Relator filed a sealed complaint against Fresenius, Chavez, and Larry Ramirez[4] (Ramirez) alleging retaliation under the FCA and various state-law tort claims in a new cause of action. Docket No. 2, Cause No. 07–CV–247–PRM. On December 21, 2007, the Court unsealed the retaliation case pursuant to Relator's motion. Docket No. 13, Cause No. 07–CV–247–PRM. On January 24, 2008, the

---

**3.** This response, as well as the response to Chavez's motion for attorney's fees, were filed out-of-time in accordance with "Realtor/Plaintiff's Notice of Stipulated Extension of Time to File Responses/Objections to Defendants' Motion for Attorneys' Fees" (Docket No. 472), wherein Relator informed the Court of an agreement with defendants to extend the response time. The Local Rules do not contemplate such arrangements and

the Court generally expects parties who have come to agreements to file an unopposed motion for leave to file. The Court will nevertheless consider Relator's late responses.

**4.** Larry Ramirez is a Fresenius employee, the manager of the Cliffview clinic, the site of many events giving rise to this action. *See* Relator's Fourth Am. Compl. 83.

Court consolidated the two cases in this action, Cause No. 07–CV–247–PRM.[5] Docket No. 18, Cause No. 07–CV–247–PRM; Docket No. 31, Cause No. 06–CV–336–PRM.

The Fresenius Defendants and Chavez each filed motions to dismiss. Docket Nos. 26, 36. On September 2, 2008, the Court dismissed Relator's common law claims of payment by mistake and unjust enrichment for lack of standing, and Relator's retaliation claims against Ramirez. "Order Granting in Part and Denying in Part Defendants' Motions to Dismiss," Docket No. 64. The parties continued to conduct extensive discovery and filed a number of discovery-related motions, which the Court referred to a United States Magistrate Judge for disposition.

On June 5, 2009, Relator submitted her Fourth Amended Complaint. Docket No. 180. On June 17, 2009 and June 19, 2009, respectively, the Fresenius Defendants and Chavez filed substantively identical motions to dismiss portions of the Fourth Amended Complaint (Docket Nos. 188, 201), which the Court granted in their entirety on January 21, 2010 (Docket No. 408). In granting the motions to dismiss, the Court dismissed two causes of action and determined that a six-year statute of limitations applied. Docket No. 408.

Relator, Fresenius, and Chavez also each filed motions for summary judgment, and related evidentiary motions pertaining to certain affidavits and expert testimony. *See* Docket Nos. 125, 155, 156, 161, 190, 224, 228, 257, 320. The Court subsequently excluded the testimony of two of Relator's experts, computational linguist Jason Baldridge and nephrologist Kenneth Kokko, and limited the scope of the testimony of two other experts, Jean Bishop, a spe-

cialist on health care fraud, and Peggy Knudsen, a registered nurse and dialysis facility consultant. *See* Trial Record; Docket Nos. 413, 414, 454, 455, 456, 457; Text Orders of Feb. 20, 2010.

On February 1, 2010, a jury having been empaneled, the case proceeded to trial, and Relator presented evidence in support of her claims over the course of three weeks [6] via live testimony, deposition testimony, and voluminous documentary evidence. At the close of Relator's case-in-chief, the Fresenius Defendants and Chavez each filed written motions for judgment as a matter of law on all remaining counts of the FCA and retaliation cases. Docket Nos. 430, 431. After due consideration, the Court granted in part and denied in part the motions for judgment as a matter of law, finding that the Defendants were entitled to judgment as a matter of law on each of the claims contained in the Retaliation Complaint and several counts of the False Claims Act Complaint. *See* Trial Record; Docket No. 458.

On February 25, 2010, the jury rendered a verdict in favor of defendants. Docket No. 453. On March 31, 2010, the Court entered final judgment in favor of defendants and against Relator on all counts. Docket No. 459. The bills of costs and motions for attorneys' fees that form the subject of the instant order followed.

## II. LEGAL STANDARD

### A. Costs

Federal Rule of Civil Procedure 54(d)(1) states that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing par-

---

**5.** Hereinafter, all citations to the docket refer to Cause No. 07–CV–247–PRM.

**6.** The trial included 13 days of testimony over four weeks.

ty." [7] FED.R.CIV.P. 54(d)(1). "Rule 54(d)(1) contains a strong presumption that the prevailing party will be awarded costs." *Pacheco v. Mineta,* 448 F.3d 783, 793 (5th Cir.2006) (citing *Schwarz v. Folloder,* 767 F.2d 125, 131 (5th Cir.1985)). The Fifth Circuit has held that "the prevailing party is prima facie entitled to costs." *Id.*

■ "[D]istrict courts have broad discretion in taxing costs of court." *Alberti v. Klevenhagen,* 46 F.3d 1347, 1358 (5th Cir. 1995). However, Section 1920 of Title 28 imposes some limitations on the district court's discretion to tax costs. *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 441–42, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987). "Section 1920 enumerates expenses that a federal court may tax as a cost under the discretionary authority found in Rule 54(d)." *Id.* Under § 1920, taxable costs include clerk fees, fees for printed or electronically recorded transcripts necessarily obtained for use in the case, fees and disbursements for printing and witnesses, and fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case, among other things. 28 U.S.C. § 1920.

The prevailing party must demonstrate that its costs are recoverable under Fifth Circuit precedent, and "the prevailing party should not burden the Court with costs that are clearly not recoverable under the law." *Maurice Mitchell Innovations, L.P. v. Intel Corp.,* 491 F.Supp.2d 684, 686 (E.D.Tex.2007).

## B. Attorney's Fees

■ Section 3730 of Title 31 permits the prevailing defendant in a False Claims Act case to recover attorney's fees:

> If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

31 U.S.C. § 3730(d)(4). "[T]he award of fees under the false claims act is reserved for rare and special circumstances." *United States ex rel. Rafizadeh v. Continental Common, Inc.,* 553 F.3d 869, 875 (5th Cir. 2008) (quoting *Pfingston v. Ronan Eng'g Co.,* 284 F.3d 999, 1006–1007 (9th Cir. 2002)).

■ A finding of any one of the three conditions listed—the action was clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment—is sufficient for an award of attorney's fees. *Mikes v. Straus,* 274 F.3d 687, 704–705 (2d Cir.2001). An action is "clearly frivolous" when it has no arguable support in existing law, nor any reasonably based suggestion for its extension, modification, or reversal. *See Rafizadeh,* 553 F.3d at 875; *Farguson v. MBank Houston, N.A.,* 808 F.2d 358, 359 (5th Cir.1986). An action is "clearly vexatious" or "brought primarily for purposes of harassment" when "the plaintiff

---

**7.** The parties have not referenced, and the Court need not address, the argument that a prevailing defendant in a *qui tam* action under the False Claims Act must meet the § 3730(d)(4) standard to be entitled to recover costs. This argument has been rejected by several courts of appeals. *See, e.g., United States ex rel. Ritchie v. Lockheed Martin Corp.,* 558 F.3d 1161, 1171–72 (10th Cir.2009) (find-

ing that Rule 54 governs the recovery of costs by a prevailing defendant in a False Claims Act case); *United States ex rel. Lindenthal v. General Dynamics Corp.,* 61 F.3d 1402, 1413–14 (9th Cir.1995) (finding that § 3730(d)(4) does not constitute an express provision regarding costs, and that the district court did not err in awarding costs under Rule 54).

pursues the litigation with an improper purpose, such as to annoy or embarrass the defendant." *Rafizadeh,* 553 F.3d at 875; *see also Pfingston,* 284 F.3d at 1006.

In addition to § 3730(d)(4), the defendants argue that an award of attorneys' fees is appropriate in this case based upon 28 U.S.C. § 1927. Under that statute, an attorney may be held personally responsible for the prevailing party's attorneys fees under certain circumstances:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

 Sanctions under § 1927 are punitive in nature and require evidence of "bad faith, improper motive, or reckless disregard of the duty owed to the court." *Edwards v. Gen. Motors Corp.,* 153 F.3d 242, 246 (5th Cir.1998). "To shift the entire cost of defense, the claimant must prove, by clear and convincing evidence, that every facet of the litigation was patently meritless, ... and counsel must have lacked a reason to file the suit and must wrongfully have persisted in its prosecution through discovery, pre-trial motions, and trial." *Procter & Gamble Co. v. Amway Corp.,* 280 F.3d 519, 525 (5th Cir. 2002).

 "The district court must make detailed factual findings when imposing large sanctions in a complex case with an extensive record." *Id.* at 526. Section 1927 "authorizes awards only for actual fees and costs which proscribed conduct

has caused" and a "district court must ... determine the excess fees and costs incurred by the opponents" in meeting unreasonable and vexatious conduct. *Browning v. Kramer,* 931 F.2d 340, 346 (5th Cir.1991).

## III. ANALYSIS

### A. Costs

The Fresenius Defendants submitted a bill of costs in the amount of $81,923.18. Chavez requested reimbursement for costs in the amount of $33,301.86.[8] These figures represent costs, incurred separately by each defendant, for three general types of expenditures: (1) depositions (including, in some cases, rough ASCII versions of the deposition transcripts, video depositions, and shipping of documents); (2) copies of trial exhibits; and (3) as to Fresenius Defendants only, daily transcripts produced during the trial. The Court will address each in turn.

#### 1. Depositions

 "[P]revailing parties are entitled to recover the costs of original depositions and copies" under § 1920 "provided they were 'necessarily obtained for use in the case.'" *Fogleman v. ARAMCO,* 920 F.2d 278, 285 (5th Cir.1991). "[A] deposition need not be introduced into evidence at trial in order to be 'necessarily obtained for use in the case.'" *Id.*

Relator apparently concedes that the defendants are entitled to their respective costs for the original depositions. That is, Relator does not contest that the taking of each deposition listed by the defendants was necessary for use in the case. Indeed, the majority of the individuals deposed eventually testified at trial. Those few who did not testify either appeared on

---

8. Defendants have adequately supported their summary of costs with documentation, including invoices supported by declarations of accuracy and necessity.

witness lists and had the possibility of being called to testify, or figured prominently in the testimony of others on factual issues in dispute. The Court thus finds that each deposition could reasonably be expected to be used for trial preparation, rather than merely discovery. *See Fogleman,* 920 F.2d at 285 (explaining the standard for awarding costs for depositions).

Relator opposes only the additional deposition-related charges for the video recording of several depositions, production of rough ASCII transcripts of depositions, and, with respect to Chavez, shipping costs. The Court's analysis will therefore be limited to the question of whether video depositions, ASCII transcripts (and other electronic versions of depositions), and shipping costs are recoverable and whether they were necessary for use in the case.

■■■ Video depositions were taken for several, but not all witnesses in this case. Fresenius Defendants did play portions of video depositions on several occasions during the trial for purposes of impeachment, including the cross examination of Relator and the expert witness Jean Bishop. The Court finds that video depositions may be recoverable costs, *see* § 1920(2); *S & D Trading Academy, LLC v. AAFIS, Inc.,* 336 Fed.Appx. 443 (5th Cir.2009), but that the video depositions were not necessary for use in the case, with the exception of the depositions of Relator herself. Ordinary deposition transcripts were adequate for trial preparation and for use at trial for most witnesses. The video depositions of Relator only were necessary for use in the case because her allegations, and thus her credibility, were central to the merits of her case. Relator's depositions, including the video, played an important role in the cross examination of Relator which in turn proved essential to Fresenius Defendants' successful motions for judgment as a matter of law on the retaliation case. Therefore, the defendants are entitled to recover video deposition costs[9] associated with Relator's depositions only.

■■■ There is some debate as to whether costs for various kinds of electronic versions of depositions are recoverable. *See Kellogg Brown & Root Intern., Inc. v. Altanmia Commercial Marketing Co. W.L.L.,* No. H–07–2684, 2009 WL 1457632 at *4–*5 (S.D.Tex. May 26, 2009) (summarizing cases). In this case, Fresenius Defendants request costs for ASCII discs, and Chavez requests costs for "E–Transcripts" and "scrunch" copies of a selected number of depositions. Whether or not these costs are recoverable as a matter of law under § 1920, the defendants have not shown that the electronic or modified versions of depositions were necessary for use in this case. While these resources were undoubtedly useful in the drafting of motions and preparation for trial, the Court finds that they were primarily a convenience to the parties and costs will not be taxed for ASCII, "E–Transcripts," or "scrunch."

■■■ Finally, the Court finds that any costs associated with shipping of depositions are not recoverable under § 1920, and thus costs billed by Chavez for shipping of depositions shall not be taxed against Relator. *See, e.g., Longo v. Chao,* No. EP–06–CV–307–KC, 2008 WL 2783509, at *4 (W.D.Tex. July 8, 2008) (Cardone, J.).

### 2. Copies

The Relator does not object to the award of costs for the copying of trial

---

**9.** The Court finds, however, that video synchronization was a convenience to the parties and not a necessity.

exhibits as invoiced by the Fresenius Defendants and Chavez. The Court finds that the copying of the voluminous exhibits in the trial of this matter was essential to the defendants. The number of copies and the rate charged by Fresenius Defendants are reasonable in light of the large number of documents on the original exhibit lists.[10]

With respect to Chavez, however, the invoice for copies includes the following items: "Copy Services—Color Blowbacks" (at 65 cents per page); "Document Prep, Imaging, and Reconstruction" in both black and white and color (at 18 and 65 cents per page respectively), "DVD Creation" (at $30.00 per DVD), and project and data management (for a combined $95.00). The Court finds that these items were not necessarily obtained for use in the case and cannot be taxed as costs against Relator.

In sum, the Fresenius Defendants are entitled to costs of copying from Relator as requested ($2,902.92), while Chavez is entitled to costs itemized for basic, black and white copying only ($6,265.42).

### 3. Daily Transcripts

■ "To award the cost of daily transcripts, the court must find that they were not obtained primarily for the convenience of the parties but were necessarily obtained for use in this case." *Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 713 F.2d 128, 133 (5th Cir.1983). A finding of necessity is a factual finding. *Id.* (citing *United States v. Kolesar*, 313 F.2d 835, 839 (5th Cir.1963)). It is not an abuse of discretion to decline to tax the costs of daily trial transcripts obtained primarily for the convenience of counsel. *Brumley Estate v. Iowa Beef Processors, Inc.*, 704 F.2d 1362, 1363–64 (5th Cir.1983).

■ The Court acknowledges that Fresenius Defendants used the daily transcripts effectively in several stages of the trial, including cross-examination, the motion for judgment as a matter of law, and closing argument. The Court nevertheless finds that the daily transcripts were a convenience to Fresenius Defendants and not necessary to their defense of the case. Fresenius Defendants had a large team of able attorneys and legal support staff that could take notes during the course of the trial on the testimony of witnesses and the rulings of the Court. The trial was relatively lengthy and complex, but not to a degree where daily transcripts were required to present a defense. Rather, daily transcripts were primarily for the convenience of Fresenius Defendants. Therefore, the Court will sustain Relator's objections to the taxing of costs for daily transcripts.

### B. Attorney's Fees

### 1. Compliance with Local Rule CV–7

Local Rule CV–7(i) imposes certain requirements for motions for attorney's fees. Among other things, the rule mandates that (a) counsel for the parties meet and confer to attempt to resolve disputed issues related to attorney's fees, and that a motion for attorney's fees should certify that such a conference has occurred and its outcome; (b) the party submit detailed supporting documents and an affidavit certifying the reasonableness and veracity of the claimed hours and rates; and (c) the party submit a memo setting forth the method for the computation of fees with citation to authority.

Neither the Fresenius Defendants nor Chavez complied with Local Rule CV–7(i)

---

10. Fresenius Defendants request payment of costs for one copy each of Relator's trial exhibits, Chavez's trial exhibits, and Fresenius Defendant's trial exhibits, or a total of 48,382 pages, at six cents per page.

to the letter. The Fresenius Defendants apparently failed to confer with Relator prior to filing the motion, did not certify that a conference occurred, and did not submit an affidavit regarding the reasonableness of their attorney's rate and the time expended along with their original motion.[11] Chavez similarly failed to confer, certify conference, and submit supporting documentation in accordance with Local Rule CV–7(i). To remedy these failures, Chavez subsequently made a motion for leave to file additional documentation in accordance with Local Rule CV–7(i), which Relator opposed.

The Court finds that the defendants' procedural failures do not preclude review of their motions on the merits, nor do they require the Court to deny the motions. While careful attention to and thorough compliance with local rules is critical to successful practice in the Court, and while motions may be struck for failure to comply with local rules, the purposes of Local Rule CV–7(i) were achieved here. Exhibits submitted in connection with the motions reveal that, at some point, some emails were exchanged between the parties on the subject, demonstrating that they conferred in a limited, informal way.[12] Chavez's Mot. for Leave to File Ex. D. Furthermore, in assessing the motions, the

Court has before it all the necessary documentation, including charts detailing the tasks performed by attorneys with corresponding hours and charges, and appropriate affidavits.

██ Local Rule CV–1(e) provides that "[a]ny judge of this Court may waive any requirement of these rules regarding the administration of that judge's specific docket." The Court finds that a waiver of the specific obligations of Local Rule CV–7(i) is appropriate in this case under the circumstances.

### 2. Fresenius Defendants

The Court begins by noting that Relator does not dispute the amount or reasonableness of the attorney's fees as outlined by Fresenius Defendants in their motion.[13] Relator argues only that Fresenius Defendants are not entitled to fees under the statutes they cite.

Fresenius Defendants request from Relator the attorney's fees incurred in defending the retaliation portion of the case only, which represented a relatively small and contained portion of the litigation as a whole. Fresenius Defendants claim that Relator "pursued her retaliation case for years when she knew the core allegation . . . was false," and that they are entitled to fees from Relator pursuant to § 3730 or

11. Fresenius Defendants did later submit an affidavit as an exhibit to its reply (Docket No. 482).

12. The Court notes that Relator's responses to the fee motions address defendants' very entitlement to attorneys' fees, therefore any agreement as to the amount of fees to be paid seems unlikely. Furthermore, the Court, having observed the zealous advocacy by all parties over the course of several years of litigation, has no trouble in accepting the Fresenius Defendants' suggestion that attempts to confer and resolve issues surrounding attorney's fees would have been futile. *See* Fresenius Defs.' Reply in Support of Mot. for Att'y's Fees 4.

13. Relator did raise the fact that a proper affidavit explaining the necessity of the work performed and reasonableness of the hourly rate was not initially submitted. However, Fresenius Defendants remedied that problem by later submitting an affidavit. Therefore, the Court finds that both the number of hours billed and the rate charged for the defense of the retaliation case by Fresenius Defendants are reasonable and reflect the complexity of the case as well as the prevailing standards for legal fees in the community. No adjustment of the fee amount is required in this case.

from counsel for Relator as a sanction under § 1927.

Although the parties do not address the question, the Court harbors reservations as to whether it may order payment of attorney's fees on the retaliation case alone under § 3730. The Court can locate no case that orders payment of attorney's fees to a defendant in a False Claims Act retaliation action without simultaneously ordering attorney's fees for the defense of FCA case itself. That is, no court has awarded attorney's fees for the defense of a retaliation case without a finding that the accompanying False Claims Act claim (which generally dominates the litigation) was clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment.

The Court need not address this issue, however, because it will find instead that Fresenius Defendants are entitled to a portion of the attorney's fees requested for the retaliation action from Relator's counsel [14] personally under § 1927.[15] As of a certain point in the progression of the case,[16] counsel for Relator unreasonably and vexatiously multiplied proceedings in the retaliation action.[17]

The Court makes the following findings in support of this conclusion:

(1) The retaliation complaint in this action included allegations that Relator was constructively discharged and subjected to intentional infliction of emotional distress. The allegations relied heavily for their factual basis on a letter that Relator wrote to Larry Ramirez, dated July 3, 2007,[18] in which she stated that she would "not lie to Medicare auditors" or "hide the fact that Devora" was performing certain functions

---

14. Relator's counsel consisted of two principal attorneys. The Court is mindful of evidence that indicates that one attorney was responsible for certain activities in the course of litigating the retaliation action, and where appropriate the Court will make that distinction. However, given that both attorneys were counsel of record on the retaliation action from the filing of the complaint through trial, both attorneys are responsible for attorney's fees sanctions.

15. Counsel for Relator had sufficient notice of the possibility of sanctions under § 1927 because, in their written submissions to the Court, Fresenius Defendants made reference to the specific statute and the limited set of conduct at issue, and they presented detailed arguments in favor of sanctions. See In re Prudential Ins. Co. America Sales Practice, 278 F.3d 175 (3d Cir.2002) (finding due process requirements were satisfied in imposing § 1927 sanctions because the sanctioned attorney received notice in the form of a motion by opposing counsel that specifically mentioned § 1927). Counsel for Relator had ample opportunity to answer those arguments in writing, and did in fact oppose the imposition of sanctions in a detailed response. The sanctions do not go beyond the scope of those

requested by Fresenius Defendants and addressed by both parties. A hearing on the matter was not requested by either party and is not required in light of the written submissions.

16. The Court notes that § 1927 makes an attorney liable for the "excess" attorney's fees resulting from the unreasonable and vexatious multiplying of proceedings.

17. Fresenius Defendants might protest that they are entitled to fees for the early stages of the retaliation action under § 3730(d)(4) if not § 1927. The Court has declined to address the legal question of whether § 3730(d)(4) permits an award of attorney's fees for a retaliation action that was clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment. But in any case, as a factual matter, the Court finds that, in its early stages, the retaliation action was not clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment.

18. Counsel for Relator Thomas E. Stanton assisted in drafting a letter for Relator's signature after filing the False Claims Act case under seal. See infra p. 454.

in the clinic, and further that she "would not be coming back to work" under those conditions. Retaliation Compl. 9 (Docket No. 2); Relator Trial Ex. 480.

(2) On September 2, 2008, the Court denied Fresenius Defendants' motion to dismiss the retaliation claims because Relator had alleged that Ramirez directed her to aid in Fresenius's efforts to conceal Medicare fraud and that she refused to do so, allegedly resulting in adverse employment actions. Docket No. 64 (Order Granting in Part and Denying in Part Defendants' Motions to Dismiss) at 19.

(3) During her first deposition, on November 5, 2008, Relator answered questions regarding the July 3 letter and the alleged retaliatory actions taken against her at Fresenius Medical Care, North America. She responded "no" to the question "Were you ever asked to lie to Medicare auditors?" Fresenius Defs.' Mot. for Att'ys' Fees, Ex. C (Gonzalez Dep., Nov. 5, 2008). She responded "no" to the question "Did anybody ever tell you that it was a requirement of your job to lie to Medicare auditors about anything?" *Id.* She responded "no" to the question "Did you ever view it as a requirement of your job to lie to Medicare auditors?" *Id.*

(4) On December 14, 2008, following the first deposition of Relator, counsel for Relator submitted an errata sheet containing 101 substantive corrections, a number of which pertained to the retaliation allegations, among other things. For example, the answer to the question: "Did you ever have the feeling that somebody at Fresenius wanted you to hide anything about DeVora seeing patients, dictating medical records, or writing progress notes for Medicare auditors?" was changed from "no" to "yes". Fresenius Defs.' Mot. for Att'ys' Fees 5.

(5) On March 12, 2009, in Relator's second deposition, she confirmed the accuracy of portions of her July 3 letter. Fresenius Defs.' Mot. for Att'ys' Fees, Ex. B (Gonzalez Dep., Mar. 12, 2009).

(6) At trial, Relator testified under cross examination that her attorney, Attorney Stanton, assisted her in preparing the July 3 letter. Trial Tr. 146, Feb. 18, 2010 (Vol. 10). She also stated in her trial testimony, consistent with her first deposition, that several of the critical assertions in the July 3 letter were not accurate:

Q: [W]ere you ever asked by anybody at Fresenius or by Dr. Chavez to help hide the fact that Mr. DeVora was seeing patients?

A: No, they didn't.

Q: Were you ever asked to lie to Medicare auditors?

\* \* \*

Q: [Reading from deposition:] Quote, Were you ever asked to lie to Medicare auditors? "Answer: No." Was that your answer ma'am?

A: Yes.

Q: Were you under oath at the time?

A: Yes.

Q: Were you telling the truth?

A: Yes.

Q: Was it a truthful answer then?

A: Yes.

Q: Is it a truthful answer today?

A: Yes.

\* \* \*

Q: Did anybody ever tell you that it was a requirement of your job to lie to Medicare auditors?

\* \* \*

A: No.

Q: Did you ever do it, as a requirement of your job, to lie to Medicare auditors?

A: No.

Trial Tr. 148–149, Feb. 18, 2010 (Vol. 10).

(7) At trial, Relator further testified that she and Attorney Stanton "worked together" on the errata, and that her attorney's assistance included "literally wording [the] changes" to her earlier sworn deposition answers. Trial Tr. 160, 161, Feb. 18, 2010 (Vol. 10).

(8) At trial, counsel for Relator elected not to call Larry Ramirez to testify in the case-in-chief (on the False Claims Act or retaliation counts). However, Larry Ramirez was named as a defendant in the retaliation complaint and he was the central figure alleged to have engaged in retaliatory conduct against Relator.

Based on these specific factual findings, and reasonable inferences therefrom, the Court finds by clear and convincing evidence that counsel for Relator unreasonably and vexatiously multiplied the proceedings when he submitted the errata sheet for Relator's deposition and continued to prosecute the retaliation case through trial. In the absence of convincing evidence to the contrary, the Court presumes good faith mistake[19] on the part of Relator's counsel in filing the retaliation complaint in the first instance. However, when their client testified under oath at a deposition to certain facts regarding the retaliation case which directly contradicted the critical allegations of the complaint, counsel for Relator should have proceeded with great caution.[20] Instead, Attorney Stanton and Relator crafted an errata sheet with 101 substantive corrections to the deposition testimony that had a bearing on the central allegations of the retaliation complaint.[21] This action had the effect of propelling the retaliation claim to trial. At trial, Relator testified consistently with her first deposition, and made clear her attorney's role in piecing the retaliation case together, from the July 3 letter to the errata and revised deposition testimony.[22]

The Court infers, from the testimony and the facts as found, an improper motive on the part of Relator's counsel in pursing the retaliation action following the submission of the errata sheet. The alterations to the deposition testimony, which were contradicted by Relator at trial, went to the very heart of the retaliation complaint. This is critical to the finding that the pursuit of the retaliation complaint

19. Certainly counsel for Relator had a duty under Rule 11 to investigate the retaliation case before filing it. However, § 1927 requires a finding of unreasonable and vexatious multiplying of proceedings, and the Court cannot infer that counsel acted vexatiously in filing the complaint initially. The conduct may have been negligent, but that is irrelevant to the § 1927 analysis. *See Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir.2003) (" 'Bad faith' is the touchstone. Section 1927 is not about mere negligence.").

20. Indeed, at this point, counsel for Relator should have contemplated voluntarily dismissing the retaliation case altogether.

21. Of course, corrections to depositions are permitted under Federal Rule of Civil Procedure 30(e), and there was nothing inherently

vexatious about counsel's conduct in altering deposition answers. Yet a United States Magistrate Judge found, and this Court affirmed, that the errata sheets should remain part of the record and that the defendants were entitled to re-depose Relator at her expense. Docket No. 103 (Order Regarding Motion for Sanctions). Further, when viewed in light of Relator's trial testimony and other events at trial, counsel's actions in submitting the errata sheet amounted to bad faith efforts to prolong the retaliation case, knowing that the claim was without merit.

22. The Court also notes that counsel for Relator did not call Ramirez to testify for reasons that are unclear.

following Relator's deposition and the errata was unreasonable and vexatious. It is evident that counsel for Relator acted unreasonably and at the very least with reckless disregard of the duty they owed to the Court in pursuing the frivolous retaliation claims through trial.

Relator's argument that counsel's actions do not merit sanction because the retaliation case proceeded to trial is not well taken. First, some claims in the retaliation claim were in fact dismissed from the case at a very early stage. See Order Granting in Part and Denying in Part Defendants' Motions to Dismiss (Docket No. 64). Second, the remainder of the claims survived the motion to dismiss stage because the Court was obligated to assume the truth of the allegations in the complaint. See Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir.2007). Counsel for Relator made allegations, presumably in good faith, at the pleading stage, but vexatiously bolstered and pursued those claims at later stages of discovery and through trial.[23]

In sum, counsel for Relator manufactured deposition responses for their client, without regard to their truth, in order to push the retaliation case toward trial. Once at trial, they pursued the claims without offering any plausible evidence. Instead, Relator's testimony revealed that the claims had no basis in fact. Counsel's conduct caused many individuals to needlessly expend significant amounts of time, resources, and energy. Hence, the Court finds that the conduct is sanctionable.

### 3. Defendant Chavez

Chavez contends that Relator had no basis for the False Claims Act claims against him because the scienter element of the statute requires proof of a "knowing" violation of law, but Relator repeatedly testified that Chavez was an honest person and never intentionally did anything wrong. Chavez's Mot. For Atty's' Fees 1. In her response, Relator disputes the issue of Chavez's entitlement to fees as well as the sufficiency of the documentation supporting the reasonableness of the fees.[24] Relator's Resp. to Chavez's Mot. for Att'ys' Fees 2, 6.

The Court finds that Chavez is not entitled to attorney's fees because the False Claims Act action against him was not clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment under § 3730(d)(4), nor did counsel for Relator unreasonably and vexatiously multiply the proceeding for purposes of § 1927 sanctions. While ultimately not successful, Relator did have a sufficient basis to pursue the False Claims Act case against Chavez. The Court, having had the opportunity to see and hear all the summary judgment evidence and trial evidence in this case, concludes that Relator had a reasonable basis for her allegations.

The Court is mindful that direct evidence of an actor's mental state is rare, and that fact-finders generally rely on circumstantial evidence and reasonable inferences in False Claims Act cases. See generally United States ex rel. Taylor–Vick v. Smith, 513 F.3d 228 (5th Cir.2008). In

---

**23.** The Court emphasizes that its finding of unreasonable and vexatious multiplying of the proceedings on the part of Relator's counsel is confined to a subset of conduct by Relator's counsel. Fresenius Defendants' motion pertains only to the retaliation complaint, and the Court finds sanctionable conduct with respect to a portion of the retaliation litigation.

As outlined below, the Court will not make any such findings with respect to the False Claims Act case against Chavez.

**24.** Chavez later supplemented the documentation in support of fees. See Chavez's Mot. for Leave to File.

this case, based on the circumstantial evidence presented, the jury might have believed that Chavez permitted his medical assistants Ramiro Devora and Arturo Orozco to participate in "face-to-face" encounters with patients that are reserved for licensed physicians, that he concealed their activities from Medicare auditors and others, and that he improperly billed Medicare for patient visits conducted by the medical assistants. Therefore, the jury might have reasonably concluded that Chavez knowingly submitted false claims to the Government for payment. The False Claims Act case had a basis in law and fact and consequently was not frivolous or vexatious.

For similar reasons, the Court declines to hold counsel for Relator personally responsible for the attorney's fees incurred by Chavez. Counsel did not unreasonably and vexatiously multiply the proceedings on the False Claims Act against Chavez.

### C. Prior Sanctions Order

On April 9, 2002, the Court affirmed an order for sanctions issued by a United States Magistrate Judge against Relator. *See* Docket Nos. 103, 131. The order required Relator to pay for costs and fees associated with her re-deposition in light of the errata sheets submitted. *See* Docket No. 103. As of this date, the sanctions order has not been amended, withdrawn, stayed, or appealed and therefore stands as a binding order of the Court. Relator "acknowledges that the prior sanctions award pertaining to her deposition remains outstanding." She does not dispute the amount identified by Fresenius Defen-

dants in fees and costs ($2,734.00)[25] or the assertion that $2,334.00 remains to be paid. Thus, Relator is bound to pay this sum under prior orders of the Court.

## IV. CONCLUSION

Given for foregoing analysis, the Court finds that Relator is responsible for costs as to Fresenius Defendants as follows:[26]

| Deposition of: | | | |
|---|---|---|---|
| | Rebecca Gonzalez | (11/5/08) | $ 2,613.00 |
| | Arturo Orozco | (2/2/09) | 1,620.00 |
| | Ramiro Devora | (2/3/09) | 2,465.00 |
| | Melissa Arvizu | (2/12/09) | 354.30 |
| | Monica Esparza | (2/12/09) | 312.21 |
| | Cecilia Herrera | (2/12/09) | 209.36 |
| | Larry Ramirez | (2/12/09) | 371.01 |
| | Cesar Del Valle | (2/17/09) | 462.72 |
| | Rebecca Gonzalez | (3/12/09) | 2,125.00 |
| | Rebecca Gonzalez | (3/13/09) | 1,377.50 |
| | Alfonso Chavez | (3/18/09) | 2,030.00 |
| | Alfonso Chavez | (3/28/09) | 1,675.00 |
| | Peggy Knudsen | (4/23/09) | 1,745.00 |
| | Kenneth Kokko | (4/25/09) | 1,104.00 |
| | Jean Bishop | (4/26/09) | 2,333.00 |
| | Sidney Kaplan | (4/27/09) | 387.50 |
| | Monica Esparza | (5/18/09) | 412.09 |
| | Sylvia Contreras | (5/18/09) | 411.80 |
| | Alfonso Chavez | (5/19/09) | 1,495.00 |
| | Joseph Pulliam | (5/27/09) | 1,537.88 |
| | Jason Baldridge | (5/29/09) | 1,220.00 |
| | Hector Montes | (6/3/09) | 104.00 |
| | Yvette Lazarin | (6/3/09) | 50.00 |
| | Jack Stovall | (6/3/09) | 66.00 |
| | Joanna Ray | (6/3/09) | 80.00 |
| | Rose Gailey | (6/3/09) | 142.00 |
| | Alfonso Chavez | (6/29/09) | 510.00 |
| | Sylvia Morales | (6/29/09) | 265.00 |
| | Robert McGorty | (7/1/09) | 257.80 |
| | Ron Castle | (7/1/09) | 484.60 |
| | Tracy Franklin | (7/1/09) | 244.40 |
| | Ron Castle | (8/24/09) | 106.21 |
| | Alfonso Chavez | (9/26/09) | 612.29 |
| | Monica Esparza | (9/26/09) | 75.80 |
| | Ramiro Devora | (9/26/09) | 227.19 |
| | Sylvia Morales | (9/26/09) | 123.75 |
| | Henry South | (9/28/09) | 1,436.35 |
| Copies: | | | 2,902.92 |
| **TOTAL:** | | | **$33,949.68** |

Relator is responsible for the following costs as to Chavez:

| Deposition of: | | | |
|---|---|---|---|
| | Rebecca Gonzalez | (11/5/08) | 1,050.25 |
| | Arturo Orozco | (2/2/09) | 568.00 |

**25.** Fresenius Defendants submitted proper documentation for the costs and fees incurred.

**26.** The deposition costs listed for Fresenius Defendants and Chavez exclude the charges for ASCII, e-transcripts, videotaping/DVD (ex-

cept in the case of depositions of Rebecca Gonzalez), video synchronization, scrunch, and shipping. In addition, costs will not be taxed for the Fresenius Defendants' September 15, 2009 deposition of Melissa Arvizu due to insufficient documentation.

| | | |
|---|---|---|
| Ramiro Devora | (2/3/09) | 906.00 |
| Melissa Arvizu | (2/12/09) | 354.30 |
| Monica Esparza | (2/12/09) | 312.21 |
| Cecilia Herrera | (2/12/09) | 209.36 |
| Larry Ramirez | (2/12/09) | 371.01 |
| Cesar Del Valle | (2/17/09) | 462.72 |
| Rebecca Gonzalez | (3/12/09) | 726.25 |
| Rebecca Gonzalez | (3/13/09) | 448.50 |
| Alfonso Chavez | (3/18/09) | 732.00 |
| Alfonso Chavez | (3/28/09) | 590.00 |
| Peggy Knudsen | (4/23/09) | 618.00 |
| Kenneth Kokko | (4/25/09) | 520.00 |
| Jean Bishop | (4/26/09) | 1,113.75 |
| Sidney Kaplan | (4/27/09) | 387.50 |
| Monica Esparza | (5/18/09) | 265.09 |
| Sylvia Contreras | (5/18/09) | 271.80 |
| Alfonso Chavez | (5/19/09) | 518.00 |
| Joseph Pulliam | (5/27/09) | 773.45 |
| Jason Baldridge | (5/29/09) | 510.00 |
| Hector Montes | (6/3/09) | 310.00 |
| Yvette Lazarin | (6/3/09) | 175.00 |
| Jack Stovall | (6/3/09) | 215.00 |
| Joanna Ray | (6/3/09) | 250.00 |
| Rose Gailey | (6/3/09) | 405.00 |
| Alfonso Chavez | (6/29/09) | 217.50 |
| Sylvia Morales | (6/29/09) | 265.00 |
| Robert McGorty | (7/1/09) | 124.60 |
| Ron Castle | (7/1/09) | 229.00 |
| Tracy Franklin | (7/1/09) | 129.20 |
| Ron Castle | (8/24/09) | 106.21 |
| Alfonso Chavez | (9/26/09) | 2,333.79 |
| Monica Esparza | (9/26/09) | 275.80 |
| Ramiro Devora | (9/26/09) | 873.69 |
| Sylvia Morales | (9/26/09) | 466.25 |
| Henry South | (9/28/09) | 687.47 |

Copies: 6,265.42

**TOTAL:** $25,037.12

Counsel for Relator must pay attorney's fees to Fresenius Defendants in the amount of $15,360.00.

Finally, Relator remains under a prior order of the Court to pay Fresenius $2,734.00 in attorney's fees, of which $2,334.00 remains to be paid.

Accordingly, the Court issues the following orders on fees and costs:

**IT IS ORDERED** that Plaintiff/Relator Rebecca Gonzalez's "Response/Objections to the Fresenius Defendants' Bill of Costs" (Docket No. 464) is **SUSTAINED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that Plaintiff/Relator Rebecca Gonzalez's "Response/Objections to Defendant Alfonso Chavez's Bill of Costs" (Docket No. 471) is **SUSTAINED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that Defendant Alfonso Chavez's "Motion for Leave to File Affidavits and a Certificate of Conference Supporting His Sanctions Motion for Attorneys' Fees" (Docket No. 476) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants Fresenius Medical Care North America, et al. and Larry Ramirez's "Motion for Attorney's Fees for Defense of Rebecca Gonzalez's Retaliation Complaint and in Accordance with Prior Sanctions Order" (Docket No. 465) is **GRANTED IN PART** and **DENIED IN PART.**

**IT IS FURTHER ORDERED** that Defendant Alfonso Chavez's "Sanctions Motion for Attorneys' Fees Under 31 U.S.C. § 3730 and 28 U.S.C. § 1927" (Docket No. 467) is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff/Relator Rebecca Gonzalez shall pay costs to Defendants Fresenius Medical Care North America, et al. and Larry Ramirez in the amount of **$33,949.68.**

**IT IS FURTHER ORDERED** that Plaintiff/Relator Rebecca Gonzalez shall pay costs to Defendant Alfonso Chavez in the amount of **$25,037.12.**

**IT IS FURTHER ORDERED** that counsel for Relator Attorney Thomas E. Stanton and Attorney Mark D. Jarmie shall pay attorney's fees to Defendants Fresenius Medical Care North America, et al. and Larry Ramirez in the amount of **$15,360.00.**

**IT IS FINALLY ORDERED** that, pursuant to the Court's prior order of April 9, 2009 (Docket No. 131), Plaintiff/Relator Rebecca Gonzalez shall pay Defendants Fresenius Medical Care North America, et al. and Larry Ramirez **$2,334.00.**